UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:16-CR-52-GFVT-HAI-1 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| CONLEY BYRD, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 39), the Court considers reported violations of supervised release conditions by Defendant Conley Byrd.

**I.**

District Judge Van Tatenhove entered Judgment against Defendant in November 2017 after Defendant pleaded guilty to one count of possession of a firearm by a convicted felon. D.E. 21, 31. Defendant was sentenced to 108 months of imprisonment[1] followed by three years of supervised release. D.E. 31. He was released on July 5, 2024. On August 1, 2024, he was referred to Bouncing Back Counseling in Manchester, Kentucky for outpatient substance abuse and mental health treatment, with drug testing.

**II.**

On September 5, 2024, the USPO issued the Supervised Release Violations Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the

---

[1] Following passage of 18 U.S.C. § 3582(c)(2), Byrd's sentence was reduced to 90 months on June 14, 2024. D.E. 38.

Report, on August 26, 2025, Bouncing Back Counseling submitted a urine specimen from Defendant to Abbott Laboratories for testing. On September 1, 2024, the results confirmed that the sample was positive for methamphetamine.

Based on this positive urine screen, Violation #1 alleges a Grade C violation of the condition that prohibits Defendant from any unlawful use of a controlled substance.

Also based on Defendant's use of methamphetamine, Violation #2 charges violations of the conditions prohibiting Defendant from committing another federal, state, or local crime and from unlawfully possessing a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a). *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000).

Defendant was arrested on September 23, 2024. The Court conducted an initial appearance under Rule 32.1 on September 26, 2024. D.E. 41. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention. Defendant did not argue for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on October 11, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 43. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established both violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possession of a firearm by a convicted felon, a Class C felony. *See* 18 U.S.C. § 922(g)(1). Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing[2]) and the "grade" of the violation proven. *See United States v. Perez Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade B violation,[3] Defendant's range, under the Revocation Table of Chapter Seven, is eighteen to twenty-four months. U.S. Sent'g Guidelines Manual § 7B1.4(a) (U.S. Sent'g Comm'n 2023).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

---

[2] The U.S. Sentencing Committee, in commentary notes on the amended guideline that altered Defendant's sentence in the underlying conviction, states that "[t]he criminal history category is not to be recalculated because the ranges set forth in the Revocation Table have been designed to take into account that the defendant violated supervision." U.S. Sent'g Guidelines Manual § 7B1.5 cmt. n.1 (U.S. Sent'g Comm'n 2023).

[3] *See* U.S. Sent'g Guidelines Manual § 7B1.2(b) (U.S. Sent'g Comm'n 2023) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

3

§ 3583(b) & (h). Defendant's conviction carries a maximum period of thirty-six months of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the government argued for revocation with eighteen months of imprisonment and a new eighteen-month term of supervised relief to follow. The defense requested inpatient drug-addiction treatment in lieu of revocation, as described in 18 § U.S.C. 3583(d).

The government emphasized the seriousness of the underlying offense, which involved Defendant pointing a loaded semi-automatic rifle at multiple people in public. The government also stressed Defendant's criminal history, in particular focusing on how substance use exacerbated the reckless and violent nature of his prior actions. They noted that Defendant's violations occurred less than two months following his release and that Defendant declined substance abuse treatment while in prison. The government did acknowledge the Defendant accepted responsibility for the violations.

The defense argued that Defendant's actions were in part brought on by a serious brain injury. When Defendant was 22, he was in a serious car accident, which caused him to be in a coma for one month then in the hospital for several more while he learned to walk and talk again. The defense argued this permanently impacted his brain, including negatively altering his impulse control and memory. The defense explained that the Defendant wanted more substantial substance abuse treatment, noting he has never undergone inpatient treatment. Defense counsel asserted that Defendant has recently struggled with depression, resulting from the passing of his father earlier this year. Defense counsel also noted that Defendant plays a role in his family's life. His mother has a seizure disorder and regularly receives assistance from Defendant.

Defendant briefly addressed the Court. He said he knows he needs treatment and wants to fix his substance abuse issues.

Senior U.S. Probation Officer, Nick Jones, was Defendant's supervising officer while on release. Jones testified that he had trouble staying in contact and communicating with Defendant. Jones also testified that Defendant was given the opportunity to participate in the Residential Drug Abuse Program (RDAP) program while incarcerated, but Defendant declined, explaining it would not help reduce his sentence.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (6th Cir. 2000) (equating use with possession).

The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. This is not such an exceptional case. Defendant was receiving outpatient treatment during his short period of release. While incarcerated, he could have participated in RDAP, the most effective, long-term treatment program known to the Court, yet he declined the opportunity. He used methamphetamines quickly after a seven-year period of presumed sobriety in prison. His criminal history shows a long pattern of lawlessness made more dangerous by substance use. The record here shows treatment has not succeeded in protecting the public and Defendant from his unfortunate addiction. The exception of § 3583(d) is not applicable in this case.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S. Sent'g Guidelines Manual § 7B1.3(a)(2) (U.S. Sent'g Comm'n 2023) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends a mid-Guidelines term of imprisonment of eighteen months, with eighteen months of supervised release to follow. The undersigned further recommends upon release, Defendant immediately undergo a substance abuse evaluation in contemplation of appropriate treatment.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The facts of the underlying conviction in this case are particularly troubling. This was an incident of horrific violence, up through the Defendant's resistance of arrest. Byrd pointed a loaded semi-automatic rifle at multiple people while intoxicated. His actions put the life and safety of many at risk.

The Court next considers Defendant's history and characteristics. Defendant has a long history of legal issues, much of which has been brought on by, or connected to, substance use. Defendant has suffered several hardships in his life, including the aforementioned serious brain injury. However, Defendant has had ample opportunity, through several years and numerous encounters with the law, to develop the skills necessary to prevent this criminal conduct.

The Court also considers the need to deter criminal conduct and protect the public. In addition to the nature of the underlying conviction, Defendant's criminal history displays a pattern

of violence towards his community. Defendant's propensity for drug-based violence is a danger to himself and the public.

Another factor focuses on opportunities for education and treatment. Defendant has repeatedly shown that he is adverse to being treated for his substance abuse issues. He has declined to participate in treatment programs in the past. There is little evidence in the record demonstrating Byrd is willing to receive treatment. Defendant does need treatment, the extent and type of which should be determined through evaluation.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. The Court is unable to seize on a sufficient justification for varying from the Range.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this factor is exacerbated by the speed with which Defendant committed these violations following his release from custody and his lengthy history of criminal behavior. While Defendant did accept responsibility, his admission of guilt does not overcome his repeated violations of the Court's trust.

For the reasons discussed herein, the Court finds the sentence recommended herein is sufficient, but not greater than necessary, to address the pertinent penalty factors.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of both violations.

2. Revocation with a term of imprisonment of eighteen months, followed by eighteen months of supervised release.

3. Addition of a new condition requiring immediate evaluation for substance abuse treatment upon release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 17th day of October, 2024.

Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**